UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **TURNER**, <br><br> Plaintiff, <br><br> v. <br><br> **FORD MOTOR COMPANY HEALTH PLAN, et al.**, <br><br> Defendants. | 2:20-CV-10374-TGB-APP <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR NO-FAULT PENALTY INTEREST AND NO-FAULT ATTORNEYS' FEES (ECF NO. 13); DENYING DEFENDANT'S MOTION TO STRIKE (ECF NO. 16)** |

Michigan's No-Fault Insurance Act was enacted with the goal of providing victims of motor vehicle accidents assured, adequate, and prompt reparation for expenses incurred from medical treatment. To that end, the Act requires no-fault insurers to reimburse claimants within 30 days of receipt of a demand for payment. In addition, the Act provides for an award of reasonable attorneys' fees to a claimant if the insurer unreasonably refuses or delays paying the claim.

In this suit, Plaintiff Alajia B. Turner sent a demand for payment to her no-fault insurer, Defendant State Farm Mutual Insurance Company. After Ms. Turner did not hear back for several months, she filed this suit in order to enforce the terms of her policy coverage and to assert that the delay entitled her to no-fault penalty interest and

1

reasonable attorneys' fees. As explained below, Plaintiff's motion will be **GRANTED**.

## I. Background

Plaintiff suffered serious injuries as a passenger in a vehicle after its driver lost control and crashed into a building.[1] ECF No. 2, PageID.5. As a result, Plaintiff has needed extensive medical treatment, including surgery, inpatient rehabilitation, physical and occupational therapy, and prescription pain medications. *Id.* at PageID.6. She will likely need ongoing treatment. *Id.*

Plaintiff's car accident has left her with numerous medical expenses. *Id.* Plaintiff is a participant in Ford Motor Company's Health Plan, a self-funded welfare benefit plan administered under ERISA.[2] *Id.* at PageID.6. She is also insured under a contract of Michigan no-fault insurance with Defendant. *Id.* at PageID.5. Her no-fault insurance includes coverage for personal injury protection ("PIP") benefits and uninsured motorist benefits. *Id.* Ford Health advanced payments for many of Plaintiff's medical expenses, even though its policy terms state

---

[1] Plaintiff has been unable to locate insurance for the driver nor its vehicle owner. Thus, Plaintiff is entitled to uninsured motorist benefits with Defendant State Farm. ECF No. 1, PageID.6.

[2] Ford Motor Company Health Plan was initially a defendant to this suit. But on June 11, 2020, the parties stipulated to and the Court approved an Order determining that Defendant State Farm is designated as the primary payor of Plaintiff's medical expenses. Defendant Ford was thus dismissed with prejudice. ECF No. 18, pageID.124.

that "Benefits under this plan are secondary to no-fault auto insurance coverage." ECF No. 13, PageID.88. Subsequently, Vengroff Williams and Associates Inc., as Ford Health's subrogation and reimbursement agent, made a claim that it is entitled to reimbursement from Plaintiff of these advanced payments. ECF No. 2, PageID.5.

On October 17, 2019, counsel for Plaintiff received a "Notice of Lien to Attorney" from Vengroff in the amount of $89,807.15. ECF No. 13, PageID.60. The following day, Plaintiff's counsel mailed this Notice of Lien to Defendant. *Id*. The letter included a demand for payment as Ford Health "was second in priority to pay medical expense claims relating to Plaintiff's accident-related injuries." *Id*. at PageID.60-61. But Defendant "never responded to Plaintiff's demand letter dated October 18, 2019." *Id*. at PageID.66. Defendant did not provide a basis or explanation for the delay or denial. *Id*. Instead, Defendant began an investigation into the merits of Plaintiff's demand for payment.

Not hearing from Defendant for several months, Plaintiff filed this suit on February 12, 2020. ECF Nos. 1 and 2. Plaintiff alleges four counts. First, that the terms of Ford Health's plan should be enforced so that Defendant's PIP coverage is primary in the order of priority. ECF No. 2, PageID.10. Second, that the terms of Ford Health's plan should enjoin Vengroff and other contractors "from asserting any right if reimbursement" against Plaintiff's noneconomic tort recovery. *Id*. at

PageID.11. Third, a determination should be made that Plaintiff "is entitled to reimbursement" from Defendant "for any expenses she must reimburse the FORD PLAN from her third-party recovery." *Id.* at PageID.12. And finally, Plaintiff alleges that Defendant has breached its contract with her by refusing to pay benefits "lawfully due and owing under said uninsured motorist coverage." *Id.* at PageID.13-15.

A few months later, on May 7, 2020, a representative from Vengroff notified Plaintiff's counsel that it had received a reimbursement check from Defendant on February 21, 2020.[3]

## II. Legal Standard

### a. No-fault penalty interest.

Michigan's insurance code states "[p]ersonal protection insurance benefits are payable as loss accrues." Mich. Comp. Law § 500.3142(1). Payment of benefits "are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." *Id.* at § 500.3142(2). If reasonable proof is not provided as to the entire claim, "the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer." *Id.*

---

[3] Although the record does not state when the reimbursement check was mailed, it is dated "February 14, 2020." ECF No. 17-1. It is also unclear from the record whether Plaintiff had knowledge that Defendant had issued a reimbursement check or that Vengroff had received the reimbursement check until May 7, 2020.

"For the purpose of calculating the extent to which benefits are overdue, payment must be treated as made on the date a draft or other valid instrument was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery." *Id*.

### b. No-fault attorneys' fees.

Michigan law also allows for the recovery of reasonable attorneys' fees "for advising and representing a claimant in an action for personal or property protection insurance benefits that are overdue. Mich. Comp. Law § 500.3148(1). The attorneys' fees shall be "a charge against the insurer in addition to the benefits recovered" if the court finds "that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." *Id*.

### III.   Discussion

Plaintiff moves for no-fault penalty interest and no-fault attorneys' fees. ECF No. 13 (citing Mich. Comp. Laws §§ 500.3142 and 500.3148(1)). Plaintiff argues that Defendant violated § 500.3142, which requires no-fault insurers to reimburse their insured for personal protection insurance benefits within 30 days upon receipt of "reasonable proof of the fact and of the amount of loss sustained." Plaintiff, in addition, argues that she is entitled to attorneys' fees because Defendant, as a no-fault insurer, unreasonably delayed paying her benefits, in violation of § 3148(1).

For its part, Defendant responds that Plaintiff did not need to file this suit because it paid for the benefits before the initiation of this suit and that its delay was reasonable. ECF No. 17, PageID.107.

The question is whether Defendant was dilatory in paying Plaintiff's claim and if so, whether Defendant had a reasonable basis in delaying payment. Before the Court considers each question in turn, it must be acknowledged that Defendant objects and moves to strike to Plaintiff's motion because Plaintiff's counsel did not seek concurrence or attempt to confer with Defense counsel, in violation of Local Rule 7.1(a)(2). Rule 7.1(a)(2) states that "[i]f concurrence is not obtained, the motion or request must state," among other bases, that there was an attempt to initiate a conference but that the parties were not able to obtain concurrence. E.D. Mich. L.R. 7.1(a)(2)(A).

Here, the record does not establish that Plaintiff's counsel tried to initiate a conference or seek concurrence with Defense counsel. A such, Defendant moves to strike Plaintiff's motion. The motion to strike will be denied. The Court instead will admonish Plaintiff for her failure to comply with Local Rule 7.1(a)(2). Plaintiff's counsel is directed to review the relevant Local Rules before proceeding. *(Not sure what kind of language serves as an adequate admonishment here)*.

### a. Plaintiff is entitled to no-fault penalty interest.

Plaintiff argues that it is entitled to no-fault penalty interest under Mich. Comp. Law § 500.3142 because she had sent Defendant "reasonable proof of the fact and of the amount of loss sustained," yet Defendant took more than 30 days to even respond to her claim. ECF No. 13, PageID.63. On October 17, 2019, Plaintiff's counsel received a Notice of Lien to Attorney from Vengroff on behalf of Ford Health. *Id*. at PageID.60. The lien was in the amount of $89,807.51, which was the amount paid by Ford Health for Plaintiff's medical treatment resulting from a motor vehicle accident. *Id*. The following day, Plaintiff's counsel mailed the Notice of Lien to Defendant. *Id*. at PageID.60-61. Plaintiff's letter stated that Plaintiff demanded payment from Defendant because, as between her no-fault insurer and ERISA plan provider, Defendant is the primary payor to pay for her medical expenses. *Id*. The letter also requested that Defendant notify Plaintiff's counsel as soon as it made a payment. Exhibit 2, ECF No. 13, PageID.82.

Defendant argues that it was not required to respond directly to Plaintiff's letter. ECF No. 17, PageID.100. Instead, after receiving the claim, it investigated whether it was obligated to make the payment. *Id*. at PageID.99. In the meantime, on February 12, 2020, Plaintiff initiated this suit.[4] ECF No. 1. Defendant issued a check in the amount of

---

[4] The initial complaint filed on February 12, 2020 was stricken for technical issues. Plaintiff re-filed on February 13, 2020.

$90,767.51 to Vengroff on February 14, 2020, which Vengroff received seven days later. ECF No. 13, PageID.92.

Michigan case law holds that no-fault penalty interest "must be assed against a no-fault insurer if the insurer refused to pay benefits and is later determined to be liable." *Williams v. AAA Michigan*, 250 Mich. App. 249, 265 (Mich. App. 2002). An insurer's good faith in not promptly paying the benefits is not relevant to the analysis. *Id*. That is because no-fault penalty interest "is intended to penalize an insurer that is dilatory in paying a claim." *Id*. (citing *Attard v. Citizens Ins. Co. of America*, 237 Mich. App. 311, 319 (1999)).

In *Williams*, the Michigan Court of Appeals held that defendant, as plaintiff's no-fault insurer, owed plaintiff "some amount of statutory and penalty interest" as a result of its delay. *Id*. at 256. The plaintiff was involved in a motor vehicle accident that resulted in him becoming a quadriplegic. *Id*. at 253. Because the defendant refused to pay plaintiff's personal protection insurance benefits, the plaintiff filed suit claiming that the refusal was unreasonable. The plaintiff, who owned a multi-story house, insisted that defendant was required to accommodate his quadriplegia by renovating his home to make it more physically accessible. Defendant instead offered to purchase plaintiff a one-story home. At issue was whether title to a newly purchased one-story home would belong to plaintiff or to the defendant insurer. The court concluded

plaintiff would have title to a new home but would have to give up title to his previous home. *Id.* at 255-56.

On appeal, defendant contended that it was not unreasonable in its delay in making plaintiff's payment because it had no obligation to pay "until plaintiff provided defendant specific proof of the exact and correct amounts that defendant was obligated to pay." *Id.* at 266. The Michigan Court of Appeals rejected this argument, reasoning that the statute "requires only *reasonable* proof of the amount of loss, not exact proof." *Id.* at 267. (emphasis in original). The court further added that if defendant insurer wanted to challenge the demand of payment, it "could have and should have conducted some investigation of its own during the thirty-day legislative grace period." *Id.*; *see also Bajraszewski v. Allstate Ins. Co.*, 825 F. Supp.2d 873, 881 (E.D. Mich. 2011) (quoting the same); *Forrester v. Harleysville Lake State Ins. Co.*, 2012 WL 3095191, at *2 (E.D. Mich. 2011). Otherwise, allowing insurers to continue its investigation outside of the grace period would contravene "the purpose of the no-fault act to provide accident victims with assured, adequate, and prompt reparations." *Id.*

Here, although Defendant objects to Plaintiff's motion for no-fault penalty interest, it makes no argument disputing that it took more than 30 days to reimburse Plaintiff for her loss. *See* ECF No. 17. Instead, much of Defendant's arguments focuses on how Plaintiff's claim presented a

"complicated legal issue" because it required resolving priority of coverage between "a first-party no-fault carrier and an ERISA plan provider." *Id.* at PageID.99. For instance, Defendant argues that it needed time to investigate whether Plaintiff's coverage under Ford Health's ERISA plan modified its own obligations as a no-fault insurer.

Defendant's argument is not relevant to the inquiry of whether it owes plaintiff no-faulty penalty fees. Michigan case law allows insurers to "show that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty" in order to escape liability *for paying no-fault attorneys' fees*, not no-fault penalty interest fees. *Ross v. Auto Club Group*, 481 Mich. 1, 11 (2008). Thus, all of Defendant's arguments attempting to establish that the delay was due to the need to resolve a legitimate question of factual uncertainty has no effect on whether it is liable for no-fault penalty interest fees because it was late in making Plaintiff's personal injury protection payment.

This leaves little left for assessing whether Defendant even disputes that it made a late payment. Defendant merely argues that taking three months to "evaluate Ford's plan, set up a claim file, and reimburse the Ford lien" was not an unreasonable amount of time. *Id.* at PageID.107. Putting aside that this appears to concede that Defendant did delay Plaintiff's payment for more than 30 days, disputing the

imposition of no-fault penalty interest does not hinge on whether the *length* of delay was reasonable. Rather, Defendant must offer arguments that it did not receive "reasonable proof of the fact and of the amount of loss sustained." *See Williams*, 250 Mich. App. at 267. Yet Defendant makes no argument that is the relevant to that inquiry. Because it appears that Defendant does not dispute that it did not receive reasonable proof establishing the amount of loss and the record supports a conclusion that Defendant in fact was dilatory in making Plaintiff's PIP coverage payment, Defendant is liable for no-fault penalty interest fees. *See* Mich. Comp. Law § 500.3142

### b. Plaintiff is entitled to no-fault attorneys' fees.

Plaintiff next moves for no-fault penalty attorneys' fees. ECF No. 13, PageID.64 (citing Mich. Comp. Law § 500.3148(1)). Plaintiff argues that she is entitled to attorneys' fees because Defendant's failure to pay within the 30 days allowed under statute was unreasonable and because Defendant failed to provide an explanation for the delay. *Id*. at PageID.65-66.

Defendant responds that its delay in making payments was not unreasonable because it was investigating the merits of the claim. ECF No. 17, PageID.102. (citing *Ross*, 481 Mich. at 11). Defendant further argues that taking three months to evaluate a legitimate question, set up a claim file, and make the reimbursement "is not an unreasonable period

of time." *Id*. at PageID.107. Defendant also argues in the alternative that even if attorneys' fees were proper here, Plaintiff's requested amount is not reasonable. *Id*.

The no-fault act "provides for an award of reasonable attorney fees to a claimant if the insurer unreasonably refuses to pay the claim." *Ross*, 481 Mich. at 11 (citing Mich. Comp. Law § 500.3148(1)). The purpose of this penalty provision "is to ensure prompt payment to the insured." *Id*. An insurer's "refusal or delay places a burden on the insurer to justify its refusal or delay." *Id*. The insurer "can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Id*. The determinative factor "is not whether the insurer ultimately is held responsible for the benefits, but whether its initial refusal to pay was unreasonable." *Id*.

In *University Rehabilitation Alliance, Inc. v. Farm Bureau General Ins. Co. of Michigan*, the Michigan Court of Appeals considered the reasonableness of attorneys' fees in the context of a contingency fee arrangement. 279 Mich. App. 691 (Mich. App. 2008). The plaintiff was a healthcare provider who sued an insurer seeking no-fault PIP benefits for services provided to an insured patient who was injured after being removed from a moving vehicle. *Id*. at 693. The defendant, who was the insured patient's insurer, refused to pay for insured patient's no-fault

12

benefits because it determined that the claim presented a question of factual uncertainty. *Id.* That is to say, there existed a question of fact as to whether the insured patient was assaulted or simply fell out of the vehicle. Defendant argued that "PIP benefits are not payable for injuries from assaults." *Id.* at 695. The trial court held that the denial was unreasonable because it was clear that the terms of the coverage obligated defendant to pay the claim. *Id.*

On appeal, defendant made the same argument. But the Court of Appeals affirmed the trial court, stating that "the plain language of the statute" and the absence of case law holding to the contrary made it plain that defendant would be obligated to make the payment regardless of the factual finding. *Id.* at 697-98. Because the terms of the policy made it clear that the defendant had an obligation to pay, such clarity could not "satisfy the requisite burden of showing that the delay was the product of a legitimate question of statutory construction or either of the other two possible reasons." *Id.* at 698. Defendant therefore had no reasonable basis for denying PIP benefits "under the facts of this case and the plain language of the statute." *Id.* Put another way, the court ruled that no-fault insurers may not muddle the plain terms of a policy in order to concoct a question of factual uncertainty, thereby justifying their delay in making payments.

The Court of Appeals also rejected defendant's contention that the attorneys' fee award was unreasonable just because it was a contingency fee arrangement. Defendant argued that the attorneys' fees awarded was not reasonable because the contingency fee "calculates to over $1,600 an hour for a case that turned out to be not very difficult." *Id.* at 698. The court opined that "a reasonable attorney fee is determined by considering the totality of the circumstances." *Id.* at 700. A contingent fee "is neither presumptively reasonable nor presumptively unreasonable." *Id.* Instead, "a contingent fee agreement may be considered as one factor in determining the reasonableness of a fee." *Id.* at 699 (quoting *Liddell v. Detroit Automobile Inter-Ins. Exch.*, 102 Mich. Ap. 636, 651-52 (1981)). The court then determined that even though the case was "fairly short-lived" and "required only 30 hours of plaintiff's attorney's time," it was reasonable to adopt a contingency fee arrangement considering the "potential for extensive litigation at an hourly rate." *Id.* at 701. In addition, because the "defendant created the situation that prompted the contingent-fee agreement," it would be unfair to plaintiff conclude that it was not reasonable. Otherwise, "not awarding [the contingent-fee agreement] as a reasonable attorney fee would reward defendant and punish plaintiff." *Id.* The plaintiff would be punished because once he or she recovers, even if the court determines that the contingent fee was not reasonable, "the client is obligated to pay the attorney fees under the terms of the contingent fee agreement." *Id.* at 702.

Here, the question is whether Defendant has shown that its delay of payment was the result of investigating a "legitimate question of statutory construction, constitutional law, or factual uncertainty." *See Ross*, 481 Mich. at 11. In Defendant's words, "the question of who has priority between a first-party no-fault carrier and an ERISA plan provider is a complicated legal issue." ECF No. 17, PageID.99. Defendant states that the general rule is that no-fault insurers are secondary to other health coverage "when competing coordination of benefits clauses exist." *Id.* at PageID.104.

Defendant does not explicitly attribute its delay to either a legitimate question of statutory construction or factual uncertainty, or both. But Defendant does cite *Auto Club Ins. Ass'n v. Frederick & Herrud, Inc.* for the proposition that "an unambiguous coordination of benefits clause in an ERISA plan must be given its plain meaning" even if a similar clause exists in a no-fault policy. 443 Mich. 358 (1993) (citations omitted). Defendant then suggests that it had to determine priority for payment of Plaintiff's claim "because the ERISA health insurance plan [i.e., Ford Health's plan] did not expressly disavow coverage for medical benefits payable under a no-fault policy." ECF No. 17, PageID.106-07.

But the record does not support this characterization. Exhibit 2 in Plaintiff's motion includes the Notice of Lien sent by Vengroff, as well as "a copy of the relevant language from the summary plan description."

15

ECF No. 13, PageID.84. The attached summary plan description, which is Ford Health's coordination of benefits clause, states:

> The Plan also coordinates with personal injury protection coverage in those states with no-fault auto insurance laws. Benefits under this plan are *secondary* to no-fault auto insurance coverage.

> ECF No. 13, PageID.88. (emphasis added).

The plain language of this ERISA plan provider's coordination benefits clause, as in *Auto Club*, "must be given its plain meaning." 443 Mich. at 362. The clause's plain meaning states that regardless of what Defendant's equivalent coordination of benefits clause required, Ford Health's coverage, as an ERISA plan provider, is *secondary* to Defendant's no-fault auto insurance coverage. Defendant's argument that it delayed in paying benefits because it had to investigate a legitimate question is therefore inconsistent with the plain language of Ford Health's coordination of benefits clause. *See University Rehabilitation*, 279 Mich. App. at 697-98. Defendant's justification for delaying payment "does not satisfy the requisite burden of showing that the delay was the product of a legitimate question" of statutory construction, constitutional law, or factual uncertainty. *See id.* Thus, Defendant did not have a reasonable basis for delaying Plaintiff's payments under the facts of this case and the plain language of Ford

16

Health's coordination of benefits clause. *See id.* Plaintiff is therefore entitled to no-fault attorneys' fees under the penalty provision.

## CONCLUSION

For all the foregoing reasons, Plaintiff's motion for no-fault penalty interest and reasonable attorneys' fees is **GRANTED**. Defendant's objection and motion to strike on the basis of Plaintiff's counsel's failure to seek concurrence is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 11, 2021        s/Terrence G. Berg
                                   TERRENCE G. BERG
                                   UNITED STATES DISTRICT JUDGE

## Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on March 11, 2021.

                                   s/A. Chubb
                                   Case Manager